c

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **LINDA WILHELM,** Plaintiff | **CIVIL ACTION NO. 1:18-CV-01328** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **CITY OF ALEXANDRIA,** *ET AL.*, Defendants | **MAGISTRATE JUDGE PEREZ-MONTES** |

---

## REPORT AND RECOMMENDATION

Before the Court is an unopposed Motion for Summary Judgment (ECF No. 17) filed by Defendants the City of Alexandria (the "City"), Officer A. Helminger ("Helminger"), and Officer M. Voorhies ("Voorhies") (collectively, "Defendants"). Plaintiff asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and for excessive force under federal and Louisiana law.[1]  No genuine issues of material fact exist regarding Plaintiff's claims.  But the claims were not patently frivolous.  Accordingly, Defendants' Motion for Summary Judgment (ECF No. 17) should be GRANTED IN PART to the extent it seeks summary judgment as to Plaintiff's claims, but DENIED IN PART to the extent it seeks an award of costs.

---

[1] Plaintiff's Petition (ECF No. 1-2) contains little more than a factual narrative and a few sporadic references to legal terms and as "excessive force."  Apart from a single reference to the "Americans with Disabilities Act," the Petition neither references specific sources of law nor delineates different "claims" or "causes of action."

However, the allegations only pertain to two potential areas of liability: disability discrimination and the improper use of force.  The former is addressed specifically and comprehensively.  The latter is addressed primarily through use of the term "excessive force." But any tort analysis – negligence, assault, battery, or excessive force – would lead to the same conclusion reached below.

## I.   Background

Plaintiff Linda Wilhelm ("Wilhelm") filed suit against Defendants in the Ninth Judicial District Court, Rapides Parish, Louisiana.  ECF No. 1-2 at 1-2.  Wilhelm alleges that on July 22, 2017, she was lawfully on the premises of "Buds N Suds" in Alexandria, Louisiana, accompanied by her service animal, a large dog.  ECF No. 1-2 at 1.  Wilhelm asserts that under the ADA, "she and her animal were entitled to remain on the premises and the owner was obligated to make reasonable accommodations on [her] behalf."  *Id.*[2]

The owner of Buds N Suds called the police and that Helminger and Voorhies arrived on the scene.  *Id.*  Helminger and Voorhies ordered her to leave or face arrest.  *Id.*  Wilhelm asserts Helminger and Voorhies used excessive force when they "drew their service handguns and threatened to kill her dog."  ECF No. 1-2 at 2.  Wilhelm also claims the police told her that if she returned "she would be arrested and her dog shot."  *Id.*

Defendants answered and propounded discovery to Wilhelm.  ECF Nos. 1 at 1, 1-3 at 1-17.  Wilhelm responded to discovery that she "believe[s] that under the provisions of the Americans with Disabilities Act we were entitled to remain and it was to[sic] the owners of the bar to make reasonable accommodations." ECF No. 1-4 at 4.  Wilhelm responded that "Alexandria City Police should not have interfered as I was lawfully at the bar."  *Id.*

Defendants removed on receipt of "other paper" under 28 U.S.C. § 1446(C)(3)

---

[2] The owner of Buds N Suds is not named as a defendant.

containing Wilhelm's assertions that Defendants interfered with her rights under the ADA.[3]  ECF No. 1 at 2-3.  Defendants now seek unopposed summary judgment and dismissal of Wilhelm's ADA and excessive force claims.[4]  ECF No. 17.

In addition to a Statement of Undisputed Material Facts (ECF No. 17-2), Defendants submit as evidence:  (1) Helminger's Affidavit (ECF No. 17-4) and body camera video (ECF No. 18); (2) Voorhies's Affidavit (ECF No. 17-5) and body camera video (ECF No. 19); (3) excerpts of the March 19, 2019 deposition of Wilhelm (ECF No. 17-6); (4) excerpts of the April 22, 2019 deposition of Mitch Parker ("Parker") (ECF No. 17-7); (5) the Affidavit of Britney Pitre ("Pitre") (ECF No. 17-8); (6) Pitre's Expert (ECF No. 17-9); (7) Pitre's Curriculum Vitae (ECF No. 17-10); and (8) the Affidavit of Mark Tigner ("Tigner") (ECF No. 17-11).

---

[3] Defendants contend they had no basis for removal prior to receipt of discovery since the Petition (ECF No. 1-2) stated allegations of ADA violations against only the owner of Buds N Suds, who has never been named. ECF No. 1 at 1-2.  The Petition has never been amended to specifically allege ADA violations against Defendants.  Thus, it is unclear whether Wilhelm asserts ADA claims against Officers Helminger and Voorhies in both their individual and official capacities.  Even if Wilhelm alleged ADA violations against Officer Helminger and Voorhies in their individual capacities, this Court has recognized that there is no individual liability under the ADA, nor can there be a parallel 42 U.S.C. § 1983 claim for ADA violations. *See Albright v. Sheriff's Dep't Rapides Par.*, No. 12-2117, 2014 WL 4702579, at *3-4 (W.D. La. Sept. 22, 2014); *see also Carter v. Derr*, No. 18-0068, 2019 WL 3202227, at *13 (W.D. La. June 19, 2019), *report and recommendation adopted*, No. 18-0068, 2019 WL 3162485 (W.D. La. July 15, 2019); *Cole v. Velasquez*, 67 Fed.Appx. 252 (5th Cir. 2003); *Rivera v. Dawson*, 05-41565, 2007 WL 1223914, at *1 (5th Cir. Apr. 25, 2007).  Therefore, the Court need not construe Wilhelm's claims to include individual capacity claims against Officers Helminger and Voorhies.

[4] Under Local Rule 7.5, "[i]f the respondent opposes a motion, he or she shall file a response . . . within 21 days after service of the motion."  And pursuant to the Court's Notice of Motion Setting (ECF No. 20), "[a]ny party filing no brief will be deemed not to oppose the motion."  Because Wilhelm did not file an opposition brief, the Motion for Summary Judgment (ECF No. 17) is deemed unopposed.

## II.    Law and Analysis

### A.    Standards governing a Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[5]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

---

[5] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

**B.    No genuine issue of material fact precludes summary judgment of Wilhelm's ADA and federal excessive force claims against Defendants.**

Defendants contend Wilhelm's ADA and excessive force claims are without merit.  ECF No. 17-1.  Defendants argue Wilhelm fails to establish a prima facie case under Title II of the ADA and fails to establish any evidence showing Helminger and Voorhies used excessive force.  ECF No. 17-1 at 9.

The Court deems admitted the following undisputed facts:[6]

1.  At approximately 9:30 p.m. on July 22, 2017, Wilhelm and her fiancé Parker went to Buds N Suds, a bar in Alexandria, Louisiana to celebrate their engagement.  ECF Nos. 17-2 at 1, 17-6 at 23-24.

2.  Wilhelm brought her dog, Viggo, with them.  ECF Nos. 17-2 at 1, 1-2 at 1. Viggo is a very large eight-year-old Nebolish mastiff.  ECF Nos. 17-2 at 1, 17-6 at 18-19.

3.  Shortly after they entered the bar, Buds N Suds's security guard Mumford told Wilhelm she could not bring Viggo inside.  ECF Nos. 17-2 at 1, 17-6 at 25, 17-7 at 2.  Mumford was reportedly acting at the direction of Buds N Suds's owner, Michael Barnhill ("Barnhill"), who did not want Viggo inside the bar because he was turning away customers and created a liability issue.  ECF Nos. 17-2 at 1-2, 18.

4.  Wilhelm refused to leave and remained inside the bar with Parker and Viggo for approximately two hours.  ECF Nos. 17-2 at 2, 17-6 at 25.

5.  Because Wilhelm refused to leave, Mumford called the Alexandria Police Department.  ECF Nos. 17-2 at 2, 17-6 at 26.  Before the police arrived, Wilhelm, Parker, and Viggo went outside.  ECF Nos. 17-2 at 2, 17-6 at 27.

6.  Officers Helminger and Voorhies responded to the scene.  Upon arrival, Helminger and Voorhies spoke to Mumford and Barnhill, who explained they wanted Wilhelm to leave.  ECF Nos. 17-2 at 2, 17-4 at 1, 17-5 at 1, 19.

7.  The officers then went to speak to Wilhelm, who was seated outside on a picnic table with Viggo standing by her side.  ECF Nos. 17-2 at 2, 19.  Parker was standing nearby.  *Id.*

---

[6] Under Local Rule 56.2W and absent controverted facts, the Court deems admitted Defendants' Statement of Undisputed Material Facts (ECF No. 17-2 at 1-4).

8.  Wilhelm told the officers she felt she had the right to remain on the property with Viggo because he is her "service dog."  ECF Nos. 17-2 at 2-3, 19.

9.  Voorhies explained that Wilhelm was on private property and the owner wanted her to leave.  ECF Nos. 17-2 at 3, 19.  Wilhelm continued to argue her position. *Id.*

10.  Voorhies then explained to Wilhelm if she did not leave she would be arrested for "remaining after being forbidden."  ECF Nos. 17-2 at 3, 19.

11.  Voorhies also explained to Wilhelm if she felt she was being discriminated against by Buds N Suds, she had the right to get an attorney and pursue a civil matter against the bar.  ECF Nos. 17-2 at 3, 19.

12.  Wilhelm, Parker, and Viggo finally complied and left the bar.  ECF Nos. 17-2 at 3, 19.

13.  Throughout the encounter, the officers remained extremely calm and polite, even after being called "dumb."  ECF Nos. 17-2 at 3, 19.

14.  At no time did either officer use any force against Wilhelm, Parker, or Viggo.  ECF Nos. 17-2 at 3, 18, 19.

15.  Viggo does not qualify as a "service animal" under the ADA.  ECF Nos. 17-2 at 3, 17-9 at 2-25.

## 1.  <u>Wilhelm fails to establish a prima facie case for ADA discrimination.</u>

The ADA is a federal anti-discrimination statute designed "[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999); *see also* 42 U.S.C. § 12101(b).  The ADA sets forth "prohibitions against discrimination in employment (Title I, §§ 12111-12117), public services furnished by governmental entities (Title II, §§ 12131-12165), and public accommodations provided by private entities (Title III, §§ 12181-12189)." *Olmstead*

*v. L.C. ex rel. Zimring*, 527 U.S. 581, 589 (1999). Here, Wilhelm's allegations against Defendants fall under Title II.[7]

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Cadena v. El Paso Cty.*, 18-50765, 2020 WL 39019, at *2 (5th Cir. Jan. 3, 2020) (citing 42 U.S.C. § 12132). A public entity includes any state or local government, or any department, agency, special purpose district, or other instrumentality of a state or local government. 42 U.S.C. § 12131(1).[8]

The regulations implementing Title II require public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Newberger v. Louisiana Dep't of Wildlife*

---

[7] This is not a case of employer discrimination and is not a case against a private party for discrimination in public accommodations provided by a private party. This is also not a case where arresting officers failed to make accommodations during and post-arrest. Instead, the facts relate to law enforcement's response to a disturbance call in which the private owner forbade a customer from its private property. A claim against the owner would fall under Title III relating to discrimination in public accommodations operated by private entities. Title III claims under the ADA expressly do not apply to public entities, including local governments. *Bloom v. Bexar County, Tex.*, 130 F.3d 722, 726 (5th Cir. 1997). However, this case involves a claim against a public entity (Title II) that Wilhelm alleges is liable under the ADA for "nonenforcement" of her Title III rights under the ADA.

[8] A plaintiff need not identify a policymaker or an official policy for claims asserted under the ADA. *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 575 (2002). However, a plaintiff asserting a private cause of action for violations of the ADA may only recover compensatory damages upon a showing of intentional discrimination. *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984).

& *Fisheries*, No. 11-2996, 2012 WL 3579843, at *4 (E.D. La. Aug. 17, 2012) (citing 28 C.F.R. § 35.130(b)(7)).  The Fifth Circuit recognizes "that a public entity's failure reasonably to accommodate the known limitations of persons with disabilities can constitute disability discrimination under Title II."  *Windham v. Harris County, Texas*, 875 F.3d 229, 235 (5th Cir. 2017) (citations omitted).

The Fifth Circuit has allowed "Title II claims in the specific context of police officers who fail reasonably to accommodate the known limitations of disabled persons they detain."  *Id.* at 235-36. (citations omitted).  "[B]ecause the ADA does not require clairvoyance, the burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation in direct and specific terms." *Windham*, 875 F.3d at 236–37 (internal citations, quotations, and alterations omitted).  Additionally, the Fifth Circuit has held that "Title II does not apply to an officer's on-the-street responses to the reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officers securing the scene and ensuring that there is no threat to human life."  *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000).

"To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that [s]he is a qualified individual within the meaning of the ADA; (2) that [s]he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of [her] disability." <u>Wilson</u>

v. City of Southlake, 936 F.3d 326, 330 (5th Cir. 2019) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672-73 (5th Cir. 2004); *Hainze*, 207 F.3d 795; and 42 U.S.C. § 12132)).

**a.    No genuine issue of material fact establishes that Wilhelm was denied the benefits of the services, programs, or activities of a public entity because of her disability.**

Defendants argue there is no evidence that Wilhelm was discriminated against or denied public services because of her disability.  ECF No. 17-1 at 23.  Defendants establish evidence showing that Officers Helminger and Voorhies advised Wilhelm that the matter was a "civil matter" and that, if she felt she was being discriminated against by Buds N Suds, she should retain an attorney and pursue a civil suit.  ECF Nos. 17-2 at 2-3, 18, 19.  Defendants assert these actions do not constitute a denial of benefits of a public service or program. ECF No. 17-1 at 22. The undisputed material facts are uncontroverted, and Wilhelm presents no evidence contrary to Defendants assertions.

Defendants argue that this case is factually similar to *Gipson v. Popeye's Chicken and Biscuits*, 942 F.Supp.2d 1303 (N.D. Ga. 2013).  ECF No. 17-1 at 19-20. In *Gipson*, the United States District Court for the Northern District of Georgia held that – assuming that the county police officer's response to the scene, conversation with the parties, and conveying to the patron that the restaurant was private property and that its manager could ask patron to leave, were "services, programs, or activities" under Title II of ADA – the exclusion, denial of benefit, or discrimination

9

was not "by reason of" the patron's disability. *Gipson*, 942 F.Supp.2d at 1307. In that case, the court stated that:

> If the court were to determine that Plaintiff was denied services based on his disability because Officer Fuller did not convince the restaurant manager that Plaintiff and his service dog could remain in the restaurant, the police would become responsible for sorting out civil liabilities. While one might argue that whether a service dog is permitted in a restaurant is a fairly straight-forward question (and one that the court will need to address with respect to Popeye's liability in this civil action), another patron might challenge the degree of slope of a handicapped ramp into the restaurant, a much more difficult question to resolve on the scene. There can be no expectation that police officers are equipped to address that type of situation when responding to a disturbance call. County police officers are not civil lawyers. Plaintiff has not alleged that the officer violated his constitutional rights.

*Id.*, 942 F.Supp.2d at 1308.

In *Albright v. Sheriffs Dep't Rapides Par.*, No. 12-2117, 2014 WL 4702579, at *7 (W.D. La. Sept. 22, 2014), this Court denied summary judgment in part as to plaintiff's ADA claim and found *Gipson* factually distinguishable. In that case, this Court found Defendants had not met their burden on summary judgment and that genuine disputes of material fact remained concerning whether the exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Albright*, 2014 WL 4702579, at *7. Here, Defendants argue that Wilhelm's action is factually distinguishable from *Albright*. ECF No. 17-1 at 23.

In *Albright*, this Court agreed that "whether a service dog is permitted in a restaurant is a straight-forward question of law, but disagree[d] that an officer would be liable if he did not convince the restaurant manager to permit plaintiff to enter with his service animal." *Albright*, 2014 WL 4702579, at *6. The officer did not

educate the restaurant manager about the ADA, but also did not inform Albright of his civil rights against the restaurant. *Id.* This Court determined that Defendants may have intentionally discriminated against Albright and the case was distinguishable from *Gibson* because Albright had a previous experience in which he was refused entry into a courthouse with his service animal and personally notified Deputy Davis, a named defendant in the suit. *Id.*

Defendants assert – and the Court agrees – that the facts of this case are more factually similar to *Pona v. Cecil Whittaker's Inc.*, 155 F.3d 1034 (8th Cir. 1998), *cert. denied*, 526 U.S. 1131 (1999). In *Pona*, employees of a pizzeria asked a customer to leave the premises because she was accompanied by a service dog. *Pona*, 155 F.3d at 1036. Pona sued the franchisor and police officers under Title III of the ADA and the Board of Police Commissioners of the City of St. Louis under Title II of the ADA. *Pona*, 155 F.3d at 1036-1037. The district court granted summary judgment in favor of the defendants, which was affirmed by the United States Court of Appeals for the Eighth Circuit. *Id.* The basis of Pona's claim against the St. Louis police officers was the fact that when officers arrived to mediate the dispute between her and the pizzeria employees, they refused to explain Pona's rights under a Missouri statute that prohibited disability discrimination. *Id.* at 1037. The officers informed her of her civil remedies and asked her to leave. *Id.*

In *Pona*, the Eighth Circuit analyzed whether a police department order that instructed officers not to enforce certain laws included the non-enforcement of a Missouri statute that prohibited discrimination against persons with disabilities.

*Pona*, 155 F.3d at 1037.  The Eighth Circuit found that the non-enforcement order had not encompassed the anti-discrimination law, but reasoned that "[i]f there had been testimony that the Order was customarily understood as applying to [the antidiscrimination law], or if there had been evidence that there were other occasions on which the Order had actually been applied to [the antidiscrimination law], then perhaps there would have been proof of a policy, practice, or custom sufficient to survive summary judgment." *Id.*

Here, it is undisputed that the owner of Buds N Suds contacted Alexandria Police Department after Wilhelm refused to leave after being asked to leave the premises.  ECF Nos. 17-2 at 2, 18, 19.  Officer Voorhies explained to Wilhelm that she was on private property, the owner wanted her to leave, and if she did not leave she would be arrested for "remaining after being forbidden."  ECF Nos. 17-2 at 3, 19. Unlike the plaintiff in *Albright*, Wilhelm was advised that she had the right to get an attorney and could pursue a civil matter against the owner of the bar for disability discrimination.  ECF Nos. 17-2 at 2-3, 17-4 at 1, 17-5 at 1, 18, 19.  Additionally, there is no evidence of intentional discrimination[9] or a history of discrimination with the

---

[9] "To recover compensatory damages for disability discrimination under Title II of the ADA, a plaintiff must show that the discrimination was 'intentional' in the sense that is was more than disparate impact." *Miraglia v. Bd.of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018) (citing *Windham*, 875 F.3d at 235 n. 5).  The Fifth Circuit has recognized that a "defendant must have notice of the violation before intent will be imputed." *Id.* (citing *Delano-Pyle*, 302 F.3d at 575-76.  Past cases have required "something more than 'deliberate indifference' to show intent." *Id.* (citations omitted).  The Fifth Circuit also agreed with the Ninth Circuit that "evidence that an entity 'lack[ed] knowledge and understanding' about compliance requirements does not 'even suggest' deliberate indifference." *Id.* (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 675 (9th Cir. 1998)).  Here, on the unrefuted evidence submitted by Defendants, there is no evidence that Defendants acted with intent to discriminate against Wilhelm because of her disability.

Defendants.   Here, there is no genuine issue of material fact establishing that Wilhelm was discriminated against or denied public services because of her disability.[10]  Thus, as to Wilhelm's ADA claim, summary judgment is appropriate.

2.    **No genuine issue of material fact supports Wilhelm's federal excessive force claims against Defendants.**

Defendants seek dismissal of Wilhelm's federal excessive force claims against them.  ECF No. 17-1 at 24-29.  The Fourth Amendment confers a right to be free from excessive force during an arrest, investigatory stop, or other "seizure" of person. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016).

To determine the objective reasonableness of an officer's use of force, "[w]e pay 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.' " *Tarver v. City of Edna,* 410 F.3d 745, 753 (5th Cir. 2005).

---

[10]  Defendants also argue summary judgment is appropriate because Wilhelm fails to establish she is a "qualified individual with a disability" and fails to establish that Viggo is a "service animal" under the ADA.  ECF No. 17-1 at 10-12.  These two other arguments appear to have merit.  But because no genuine issue of material fact suggest that Wilhelm was denied benefits of public services of a public entity because of her disability, Title II liability is foreclosed.  Thus, the Court need not, and does not, reach Defendants' remaining two arguments.

Here, Wilhelm alleges Helminger and Voorhies used excessive force when they "drew their service handguns and threatened to kill her dog." ECF No. 1-2 at 2. Wilhelm does not allege whether her excessive force claims are under federal or state law. ECF 1-2. Her Petition contains no other specific allegations. *Id.* Therefore, construing Wilhelm's claims liberally in her favor, the Court assumes Wilhelm asserts both federal and state excessive force claims.

A review of the video evidence and uncontroverted material facts establish no excessive force was used against Wilhelm or Viggo. ECF Nos. 17-2 at 3; 18, 19. Wilhelm testified at her deposition that the officers grabbed her by the arm and threatened to kill her dog. ECF No. 17-6 at 31. However, she did not mention that any officer drew their weapon. ECF No. 17-6 at 31. When questioned regarding the discrepancy, she stated she forgot to mention it and then alleged the video was incomplete and corrupted. ECF No. 17-6 at 31-32. However, the body camera videos do not support Wilhelm's allegations or deposition testimony. ECF Nos. 18, 19. Additionally, Defendants presented the affidavit of Tigner, establishing that the body camera videos of Helminger (ECF No. 18) and Voorhies (ECF No. 19) are true and accurate copies of the footage on July 22, 2017 and have not been altered in any way. ECF No. 17-1 at 1-2.

Wilhelm fails to provide any evidence refuting Defendants' undisputed material facts and video evidence showing no use of excessive force. Likewise, no evidence establishes a constitutional violation, or that any policymaker or policy was the moving force behind any constitutional violation. *See Monell v. Dep't of Soc.*

14

*Servs.*, 436 U.S. 658, 694 (1978).[11]   Thus, there is no genuine issue of material fact to support Wilhelm's claim that Defendants used excessive force against Wilhelm in violation of the Fourth Amendment.

    **C.**    <u>The Court should exercise supplemental jurisdiction and grant summary judgment as to Wilhelm's state excessive force claim.</u>

Defendants also seek summary judgment of Wilhelm's state excessive force claim.  ECF No. 17-1 at 29.  Defendants argue Wilhelm's state excessive force claim is without merit since the officers did not use any force, much less excessive force.  *Id.* Based on the facts alleged, it is not clear what other possible state claims Wilhelm intended.  However, Wilhelm is represented, and Wilhelm has failed to identify any other state law claims.  She also does not refute Defendants' contentions regarding her state excessive force claim.  Those contentions would warrant summary judgment on any other state law claim arising from the use of force.

Having determined that Wilhelm's federal claims should be dismissed, the remaining question is whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over Wilhelm's remaining state law claim.

Generally, when, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, a court should decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c); *see Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted).

---

[11] "The failure to address the *Monell* claim amounts to abandonment of such claims." *See Shepherd v. City of Shreveport*, No. 14-2623, 2018 WL 1513679 (W.D. La. Mar. 27, 2018), *aff'd sub nom. Shepherd on behalf of Estate of Shephard v. City of Shreveport*, 920 F.3d 278 (5th Cir. 2019) (citation omitted) (granting summary judgment of plaintiff's *Monell* claims).

Section 1367(c) provides that a district court "may decline" to exercise such jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

The Fifth Circuit has emphasized that "in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992). However, "[t]hese interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (citing *Parker*, 972 F.2d at 587).

Here, the Court should exercise supplemental jurisdiction. "[E]xcessive force claims under both federal and Louisiana law turn on whether the use of force was objectively reasonable given the totality of the circumstances. This has been widely recognized by [the United States Court of Appeals for the Fifth Circuit], Louisiana federal district courts, and the Louisiana Supreme Court." *Shephard on behalf of Estate of Shephard*, 920 F.3d at 286 (citing *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009) ("Louisiana's excessive force tort mirrors its federal constitutional

counterpart . . . 'Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case[.]' . . . These considerations are sufficiently similar to the *Graham* factors that our decision on this claim mirrors our decision of plaintiffs' § 1983 excessive force claim.")).  Wilhelm's state law excessive force claim is not novel or complex and Wilhelm's state law excessive force claim derives from the same factual allegations against Defendants. There are no other compelling reasons for declining jurisdiction.

Because no genuine issue of material fact establishes that any excessive force was used against Wilhelm, Defendants are entitled to summary judgment as to Wilhelm's state law excessive force claim.  *See Shephard*, 920 F.3d at 286 (finding that the district court did not err in granting summary judgment to the defendants on the state law excessive force claims).

### D.    Defendants' request for costs should be denied.

Defendants seek costs against Wilhelm.  ECF No. 17 at 2.  "Under the ADA, a court 'may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs.'"  *Shelton v. Louisiana State*, 919 F.3d 325, 328 (5th Cir. 2019) (quoting 42 U.S.C. § 121205).  The ADA fee-shifting provision has language similar to that of title VII and 42 U.S.C. § 1988.  *Vitale v. Georgia Gulf Corp.*, 82 Fed.Appx. 873, 876 (5th Cir. 2003).  "Under this standard, a prevailing defendant may not receive fees "unless a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).

Here, Wilhelm's poorly pleaded allegations of ADA discrimination and lack of evidence proved fatal to her claims. However, there is no evidence that Wilhelm's claims were frivolous, unreasonable, or groundless. Thus, the Court recommends denial of Defendants' request for costs.

## III. Conclusion

Because no genuine issues of material fact exist to support Wilhelm's ADA, federal excessive force, and state excessive force claims against Defendants; because no evidence establishes that Wilhelm's claims were frivolous, unreasonable, or groundless; and because the Court should exercise supplemental jurisdiction;

IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (ECF No. 17) be GRANTED IN PART to the extent it seeks summary judgment as to Wilhelm's claims, and DENIED IN PART to the extent it seeks costs.

IT IS FURTHER RECOMMENDED that Wilhelm's claims against Defendants be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this  7th  day of February 2020.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE